FILED
2019 Jan-18 AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| ARETHA WALLACE, )<br> )<br>    Plaintiff, )<br>v. )<br> )<br>NANCY A. BERRYHILL, Acting )<br>**Commissioner of the United States** )<br>**Social Security Administration** )<br> )<br>    Defendant. ) | Civil Action Number<br>**6:17-cv-02171-AKK** |

## MEMORANDUM OPINION

Aretha Wallace brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge's ("ALJ") and the Appeals Council's decisions—which have become the decision of the Commissioner—are supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

### I. PROCEDURAL HISTORY

On November 17, 2015, Wallace filed applications for a period of disability and disability insurance benefits (DIB) and for supplemental security income, alleging a disability beginning June 1, 2008. R. 199-210. After the denial of both

applications, Wallace requested a hearing before an ALJ. R. 96-99, 35. At the hearing and upon Wallace's request, the ALJ amended her alleged onset date of disability to July 11, 2014. R. 45-46. The ALJ ultimately denied Wallace's claim, finding that Wallace was not disabled under the Act. R. 7-26. This became the final decision of the Commissioner when the Appeals Council refused to grant review. R. 1-6. Wallace then filed this action pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390 (1971); *Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence, and this court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The ALJ's decision is supported by substantial evidence if it is based on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).

If supported by substantial evidence, the Commissioner's factual findings must be affirmed "[e]ven if the evidence preponderates against the Commissioner's findings. . . ." *Id.* (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir. 1993). While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The disability must have begun on or before the date that the individual was last insured for disability benefits. 42 U.S.C. § 423 (a)(1)(A), (c)(1).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior

work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At step one, the ALJ found that Wallace has not engaged in substantial gainful activity since the alleged onset date of disability. R. 12. At step two, the ALJ found that Wallace had severe impairments of mild degenerative disk disease/osteoarthritis of the cervical and lumbar spine, asthma/chronic obstructive pulmonary disease, obesity, gastroesophageal reflux disease/mild gastritis, bilateral carpal tunnel syndrome status post right surgical repair, epicondylitis, a major depressive disorder, an anxiety disorder (not otherwise specified), and a history of polysubstance use/abuse. R. 12-13. At step three, the ALJ found that Wallace's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 15-16.

Before proceeding to step four, the ALJ found, based on the entire record, that Wallace had the residual functional capacity (RFC) to, among other things, occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry ten pounds; stand and/or walk in combination, with normal breaks, for up to eight hours during an eight-hour workday; avoid concentrated exposure to pulmonary irritants, including fumes, dusts, odors, gases, and areas of poor ventilation; frequently perform fine and gross manipulations with the upper extremities

bilaterally; perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few work place changes; and have occasional interactions with co-workers and supervisors and no interactions with members of the general public. R. 14-20.

At step four, the ALJ found that Wallace has no past relevant work. R. 21. Based on Wallace's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Wallace could perform, including the representative occupations of sorter, inspector, and bagger. R. 21-22. Therefore, the ALJ concluded that Wallace was not disabled as defined by the Act. R. 22.

## V. ANALYSIS

Wallace contends that the ALJ's RFC findings, which are consistent with the regulatory definition of "light work," are not supported by substantial evidence. *See* R. 15; doc. 12 at 13-18.[1] Alternatively, Wallace contends that she is limited to

---

[1] The regulations define "light work" as follows: "(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

sedentary work, and that the court should remand this case to the ALJ to determine if she is illiterate and, consequently, disabled. Doc. 12 at 16-17.

The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). A claimant's RFC is an administrative finding made by the ALJ. *See* 20 C.F.R. § 404.1546; SSR 96-5, 1996 WL 374183. In determining the RFC, an ALJ must consider any statements from medical sources about a claimant's limitations caused by her impairments and symptoms, as well as statements by the claimant herself concerning her limitations. 20 C.F.R. § 404.1545(a)(3). Accordingly, in order to determine whether substantial evidence supports the ALJ's RFC finding, the court must also determine whether the ALJ erred in partially discrediting Wallace's testimony.

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). The claimant must present:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (citation omitted). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Marbury v. Sullivan,* 957 F.2d 837, 839–40 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").

At the hearing, Wallace testified that she experienced neck pain for approximately one year that prevented her from moving her head. R. 48. She also stated that she suffered from complete numbness in her right "middle" and "ring" fingers, which persisted after she underwent carpal tunnel decompression surgery. R. 58. As a result of this numbness, Wallace claimed that she cannot perform basic activities such as getting dressed, tying her shoes, or putting on earrings, and requires assistance from her daughter to dress every day. R. 49, 60. Additionally, Wallace testified that she suffered from asthma for two years, has difficulty breathing, and "can't go outside" due to her allergies to weeds and trees. Doc. 67-68.

In determining Wallace's RFC, the ALJ summarized Wallace's testimony and found that, while Wallace's impairments could reasonably cause some of her symptoms, evidence in the record contradicted Wallace's statements concerning the "intensity, persistence, and limiting effects of these symptoms." R.15. The ALJ

articulated specific reasons for partially rejecting Wallace's testimony concerning her symptoms, citing medical evidence that undermined Wallace's testimony concerning her alleged symptoms. R. 15-21. She then detailed a function-by-function analysis of Wallace's RFC. *See* R. 14-15.

**A. Whether the ALJ Erred in Determining Wallace's RFC**

Wallace argues that the ALJ ignored evidence that Wallace's hand numbness, neck pain, and respiratory problems prevent her from performing "light work." Doc. 12 at 15-16. However, a review of the record reveals that the ALJ provided adequate reasons for discounting Wallace's testimony, and that substantial evidence supports the ALJ's RFC findings. *See Wilson*, 284 F.3d at 1225; *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's RFC finding of light work where medical records indicated the claimant was managing her impairments "well").

    1. <u>Right Hand Numbness</u>

Various medical records from 2014 through 2016 undermine Wallace's claims of complete numbness in her right hand. *See* R. 18. Wallace's medical records, including Dr. Farouk Raquib's medical notes in August 2014, suggest that her right carpal tunnel syndrome was "mild" and had limited effects on her right

9

hand. R. 499. Dr. Raquib's assessment was later confirmed by Dr. David Longmire's motor nerve studies in April 2016, which state that Wallace's peroneal nerves were "normal bilaterally," her ulnar nerves were "normal bilaterally" but displayed a "mild <u>relative</u> showing on the right," and her median nerves displayed "chronic bilateral carpal tunnel compression, much more severe on the left." R. 439 (emphasis in original). Finally, Dr. Laura Lindsey's notes from a January 2016 examination also contradict Wallace's alleged limitations. Dr. Lindsey noted that Wallace had "normal" range of motion in both wrists, and "normal" grip strength and dexterity in both hands. R. 373-74. She further noted that Wallace's "sensation is intact," and that she was able to "independently . . . carry, lift, travel, and handle objects." R. 372.

Wallace contends that the ALJ ignored Wallace's "history of carpal tunnel syndrome," including Wallace's right hand complaints in June 2016 and weakened grip strength in September 2016. *See* doc. 12 at 14; R. 446, 483. However, as the ALJ noted, although Wallace reported worsening numbness in her right hand beginning in March 2016 and continuing through September 2016, the record suggests that these symptoms improved after Wallace's carpal tunnel decompression surgery on her right hand in September 2016. *See* R. 19, 408, 434-54. Indeed, thirteen days after the surgery, Dr. Lloyd Dyas noted that Wallace had "no unusual complaints" and that she was "doing well." R. 487-88. And, although

Wallace was scheduled for a follow-up visit eight weeks later, there are no further documented complaints after her October 2016 appointment. *Id.* While Wallace is correct that "this evidence is not conclusive that her symptoms have resolved," doc. 12 at 14, she ignores that it provides evidence of improvement which, when combined with the contradictory medical evidence in the record, provides substantial evidence to support the ALJ's RFC determination. *See Quick v. Comm'r of Soc. Sec.*, 403 F. App'x 381, 384 (11th Cir. 2010) (finding that the ALJ properly discounted the claimant's pain testimony based on a lack of complaints and evidence of improvement).

2. <u>Neck Pain</u>

The ALJ also articulated sufficient reasons, based on substantial evidence, for partially discounting Wallace's testimony concerning her neck pain and for concluding that Wallace can perform "light work." First, as the ALJ noted, Dr. Lindsey's January 2016 opinion—that there was "no pain to palpation of the cervical, thoracic, or lumbosacral spine or the muscles surrounding these areas. She has full range of motion of the spine without difficulty" and that Wallace's head was "normocephalic and atraumatic. Her neck is supple[,]" R. 371, 373-74—undermines Wallace's testimony concerning her neck. Also, additional medical records in 2016 suggest that Wallace did not suffer from disabling neck pain: (1) February 2016—Dr. Derek Cannon noted that Wallace's neck was "supple, full

range of motion without nuchal rigidity, or vertebral point tenderness," and that she reported no pain. R. 386-87; (2) June 2016—Dr. Srilakshmi Settipalli also noted that Wallace's neck was "supple, full range of motion." R. 457; and (3) August 2016—Dr. Mark Randall noted that Wallace's neck was "supple, no masses, trachea midline." R. 381. In addition to the evidence from 2016, the ALJ also pointed out that Wallace did not report any pain during at least four medical visits from January through August 2015. *See* R. 347, 352, 354, 356. Based on this record, the substantial evidence supports the ALJ's findings related to Wallace's neck.

Moreover, the medical evidence that Wallace cites does not provide a basis for concluding that the ALJ's RFC and credibility findings lacked substantial evidence. *See* doc. 12 at 15 (citing her April 2016 radiology report, back brace, and pain medication); *Crawford*, 363 F.3d at 1158 (explaining the standard for substantial evidence). Although Wallace's April 2016 cervical MRI scan revealed "tiny" disc protrusions and "mild" disc bulging, the report also notes "[n]o evidence of significant foraminal, central canal, or lateral recess stenosis," and that her lumbar MRI scan revealed "no evidence of neural impingement." R. R. 412, 440, 414, 441. With respect to Wallace's treatment, Dr. Longmire noted in June 2016 that Wallace had experienced "moderate benefit" from her medication with Tylenol and Zanaflex. R. 446. In light of the substantial medical evidence

suggesting that Wallace's neck pain was not disabling, there is an insufficient basis to overturn the ALJ's credibility and RFC findings. *See Martin*, 894 F. 2d at 1529 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.").

3. Respiratory Problems

The substantial evidence also supports the ALJ's credibility and RFC findings related to Wallace's respiratory problems. Various medical records suggest that Wallace's symptoms of asthma and chronic obstructive pulmonary disease have improved or that she is asymptomatic. For instance, in October 2015, Wallace's discharge report from the Northwest Medical Center indicated that her chest x-rays "essentially . . . showed a normal chest," that she was "much improved," and that she appeared "comfortable." R. 320-21, 23. In January 2016, Dr. Lindsey noted that Wallace's "chest appears normal" and that she exhibited "clear breath sounds." R. 371. That same month, Dr. Robert Smith noted that Wallace's "lung bases are clear." R. 390. In February 2016, medical notes from the Northwest Medical Center observe that her lungs "have equal breath sounds bilaterally, clear to auscultation and percussion. . . . No increased work of breathing, no retractions or nasal flaring." R. 386. Additional clinic records from February and March 2016 note that Wallace displayed no symptoms for "chest, congestion, cough, wheezing, [or] shortness of breath." R. 451, 454. Finally, in

13

August 2016, Wallace reportedly denied cardiac or pulmonary issues, and Dr. Randall noted that her breathing was "unlabored." R. 381.

Based on the record, Wallace has failed to show that the ALJ erred in assessing Wallace's RFC.

### B. Whether the Court Should Remand This Case to the ALJ to Determine Whether Wallace is Illiterate

Citing Grid Rule 201.17, which states that a claimant who is limited to "sedentary work," between the ages of 45 and 49, has no past relevant work experience, and is illiterate is disabled, 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Table 1, Rule 201.17, Wallace contends that she meets the first three criteria. Therefore, she requests that the court remand this case for the ALJ to determine if she is illiterate. In light of the court's finding that substantial evidence supports the ALJ's RFC determination that Wallace is limited to "light work," the court disagrees with Wallace that she is limited to "sedentary work," and rejects Wallace's contention that remand is warranted here.

### VI. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's determination that Wallace is not disabled is supported by substantial evidence, and that the Commissioner applied the proper legal standards. The Commissioner's

final decision is **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

**DONE** the 18th day of January, 2019.

*Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE